Thank you, Your Honor. If it pleases the Court, Robert Williams, I'm appearing for the Diego, who has been referring to the Diego family's defense across appellants in this matter. As I'm sure the Court is aware, this is an insurance discovery dispute. We had two haulers, an Antonini Fruit Express, an A&E transport company. They were hauling tomatoes for Stanislaus Food Products. Both of the haulers were hauling tomatoes under written hauling agreements. On August 10, 2005, there was a tragic accident involving an A&E truck, and five people were killed in the accident. And there were some other injuries. That case has been resolved. Carolina Casualty has filed a declaratory relief action. We have filed a cross-complaint against Carolina Casualty for damages over and above what was resolved in the initial case, as to whether, at the time of the accident, an A&E transport company was insured under the Carolina Casualty policy. I think he did a very – Judge O'Neill did a very recent opinion, but I think he overlooked two things. Judge O'Neill correctly indicated that in order to determine coverage in this case, they had to look at the totality of the circumstances, in other words, the contracts that were A&E transport was to be named on the general liability portion of Antonini's policy. That was the policy in question with Carolina Casualty. Carolina Casualty's agent complied with that request by a blanket additional insured endorsement, rather than specifically endorsing them onto the that they were named as additional insured under Antonini's policy. And in the certificate of insurance, the coverages being provided were general liability, auto coverage, and some cargo coverage. When Judge O'Neill analyzed the transactions, he looked at the policy and he is in conflict with the certificate of insurance the policy controls. Is that right? That is the general rule, Your Honor. But in this particular case, the blanket endorsement makes the certificate of insurance a part of the policy. It says that an insured is obligated to be placed as an additional insured under a written contract, evidenced by a certificate of insurance. So in this particular case, Carolina Casualty made the coverage that was being provided to the insured. I think that's rather standard language. I don't think the California courts, when they say that the certificate doesn't control over contrary policy, is reading that rather boilerplate language out of its rule. But this is not contrary language. The certificate of insurance, there's nothing contrary in the policy. Then you better point me to the policy. What part of the policy gives you the assurance that you claim is covering? Under the certificate of insurance? No, in the policy itself. The policy was issued to Antonini. So the policy itself is silent on the coverages to be provided to ANA trucking. The only where in the policy itself that it speaks to coverages being are the certificate of insurance. Okay. Let me make sure I know where the players are here. The issue here is whether Carolina Casualty has, by adding ANA to its policy, has agreed to insure ANA with respect to liability for a vehicle accident. That's the question. Yes, that's the question, Your Honor. Okay. And as I look at the policy, we've got an endorsement that reads, and I'm on ER 173, this endorsement modifies insurance provided under the following, commercial automobile coverage, and then a few more. And then it says, A, who has been insured, section 2, liability coverage, is amended to include as an insured, and I'll sort of shortchange it and say ANA. That's what the policy says. It's not evidenced by a certificate of insurance. I don't know why you need that. That is to say, I just look at the endorsement and it says, ANA has just been added as an insured policy, as an insured for commercial automobile coverage. I agree with that. Okay. I do agree with that. And that was the second point in my argument, and I was hesitating whether to go directly there or not. The second point that Judge O'Neill found in this case was the, as you correctly noted, ANA was added to the policy, no one argues that, under the blanket endorsement for the operation, maintenance, and use of a covered auto. That's what it says. The problem is, is the general liability portion of the policy has an auto exclusion. And what Judge O'Neill found was that this endorsement only changed the portion of the commercial liability to add ANA as an insured, but it did not change the coverage that's being provided under the general liability. Vis-a-vis, auto was excluded. But what I think the Court neglected to do is the endorsement itself said, at the very beginning of the endorsement, ER-173, this endorsement modifies insurance provided under the following, including the general liability. The law is very clear. If an endorsement is in conflict with the language of the body of the policy, the endorsement trumps the exclusion in this case. You know, I would argue the case somewhat differently from the way you're arguing it precisely. If I look not at the added insured ANA to the policy, but I really just look at the policy, Carolina Casualty, that it had with Antonini, that policy insures Antonini for commercial automobile coverage. It also insures it for commercial general liability and a few other things. Correct. With respect to the principal insured, Antonini, there is no way that the exclusion contained in commercial general liability operates as an exclusion for commercial automobile coverage. I agree. And the endorsement that adds ANA simply says we add ANA as an insured to commercial automobile coverage and to commercial general liability coverage. And if that's the only language that's relevant, I have no way of understanding how in the world an exclusion for the general liability coverage would operate as an exclusion for the commercial automobile coverage when it doesn't operate, say, for the principal insured Antonini. I agree. But you didn't argue that. I'm sorry, Your Honor. The problem with your argument, though. I like his argument. That's true, is that the endorsement doesn't just read the way you referred to it. The next provision, who is an insured in the same endorsement that says under the following automobile coverage, general liability, cargo coverage, liability coverage, next provision, who is insured says liability coverage is amended to include as an insured any person or organization with respect to the operation, maintenance, or use of a covered auto whom you are required to add as an additional insured on this policy under a written contract or agreement evidenced by the certificate filed with us. So the problem is the very selfsame endorsement limits the addition of the insured, an additional insured, to the requirements of the hauling contract. Correct. And clearly the hauling contract limits the requirement to this cross coverage, which just simply does not apply in this incidence where both tractor and trailer were A&As. I don't quite understand that. What it does is require it to be added to the general commercial liability. Under the Carolina blanket endorsement, what is added, is amended, is that A&A was added for the use of a covered auto. If you say that the general liability does not provide coverage for the use of a covered auto because of the auto exclusion, then in fact the blanket endorsement under the contract has provided no coverage to A&A whatsoever because the only coverage being provided to A&A is auto coverage. And clearly the contract says you have to add A&A to the general liability coverage on the Antonini policy, which was done. That was done. Then you have to look to the Antonini policy and see what was it that they added A&A to. And it's auto coverage. And if you look at the certificate of insurance, which is the evidence of the coverage that's provided, it's general liability and auto. Therefore, we think it's covered. And I don't know if there's a concern that was raised in the brief. Was the Antonini, was the A&A vehicle a covered auto at the time? The policy declarations clearly indicates that the covered vehicles under this policy was symbol number 41, which is any auto. The argument is tempted to be made that it was limited to owned, leased autos of that type. Those are covered under symbols 42 and 47, which are not the symbols used under liability coverage of this policy. In fact, the fact that symbol 41, any auto, was conceded in the appellee's brief on page 17, where they even note that symbol 41 was used as covered any auto. They were saying it doesn't make sense that we're covering every auto in the universe. That's not what it means. Any auto that's being used by an insured is covered. It's just like your standard automobile policy that I'm sure each of you have and I have. Any vehicle I drive, I'm covered. That's in the commercial market, that's why they used any auto. So we have a covered vehicle with an insured being insured for auto coverage under the endorsement as evidenced by the certificate of insurance. And I submitted, Your Honor, that's why we believe that at the time of the accident ANA was a covered insured under this policy. Okay. Why don't we hear from the other side, and then you've saved about three minutes. Thank you very much. Good morning, Your Honors. May it please the Court. My name is Colin Hatcher of the firm Chalakian and Associates. Okay. And before you begin, let me explain why we denied the motion to continue argument made by Mr. Chalakian. Yes. He was notified of the date of the argument on March the 30th, and he moved to continue until May the 4th. At the time he moved to continue, the names of the panel members had been released to the public. I'm not at all suggesting that he was judge shopping, but I'll say as a general proposition that we are much more skeptical of requests to continue argument based on conflicts when the request is made after the names of the panel members are revealed. Understood, Your Honor. But I just want to tell you that as a general proposition as to why, if you wait too long, you're likely to get that motion denied. And I want to make sure that you transmit back to Mr. Chalakian, I'm not at all charging him with judge shopping, but because of that concern, we have a hesitation to grant those late motions. Thank you, Your Honor. Understood. Mr. Chalakian is now in trial. No, that's exactly what he said. I understand. That's why I'm here, Your Honor. And we're happy to have you. Your Honor, we, of course, represent the appellee, Carolina Casualty. Your Honor, there's a consistent mix-up going on. It's in the plaintiff's appellate brief between covered loss, covered auto, covered entity. I want to jump to the question the Court raised, first of all, Your Honor, the question of the commercial general liability policy. I think Your Honor raised the question that if the exclusion applies to A and A, then the exclusion applies to Antonini. Of course, Your Honor, it does. Antonini is excluded in that CGL, but not, Your Honor, from an auto-related loss. The precise language, Your Honor, is bodily injury claims or property damage claims arising from an auto. Right. And those come under the commercial automobile coverage, correct? That's correct, Your Honor. Antonini doesn't need that coverage in the CGL, because Antonini has that coverage in the commercial auto part of the policy. I understand that. But my problem is, and the answer that Judge Jones suggested is the answer that was given by the district court, and it might be the right answer, but my concern is that A and A is endorsed as an additional insured for the commercial automobile coverage, not merely for the commercial general liability coverage. And if Antonini is covered under both, both commercial automobile and commercial general liability, and as well understood, the exclusion for general liability does not apply to the commercial automobile policy for Antonini, why should it apply to A and A who has been added to both of those policies? I mean, that's my question. Your Honor, there's more than one answer to this, and I'll give them. First of all, Your Honor, A and A is not added to the commercial auto coverage. Why does it say that, then, in the endorsement? It does not say that, Your Honor. The court must remember, Your Honor, that this blanket endorsement addresses all parties required to be added to the coverages pursuant to the written contract. The district court, Your Honor, accurately referred itself. That's interesting. You added the terms pursuant to the written contract. Their argument, which you didn't make but was made in the brief, was that this indicates that the triggering factor was the haulage contract, but there's nothing in this endorsement that says the purposes and the limitations contained in the hauling contract are hereby incorporated. The district court thought that they were and read this that way. And that may be a plausible reading, but it doesn't quite say that. Your Honor, what I'm pointing out here is this blanket endorsement refers to both Stanislaus Foods and A&A. It doesn't just apply to A&A. It's both Stanislaus Foods and A&A who are added as additional insurers pursuant to the written hauling agreement. So when the court looks at this endorsement, the court has to remember that when the endorsement says at the top that there's going to be a modification to coverage for the four categories, one of which is commercial automobile coverage, the court has to remember two things. First of all, Your Honor, it's not A&A being added to the commercial auto. It's Stanislaus. And secondly, Your Honor, part of the commercial liability section in the policy is trailer interchange coverage for which A&A is being provided coverage. Now, Your Honor, the law is very clear that when an endorsement references a separate written agreement, that agreement must be considered. That's not a question of ambiguity, Your Honor. In fact, the endorsement says there's no way, Your Honor, for anyone to know who an additional insured is based on the blanket endorsement without reference to the written agreement. Of course. When we go to the written agreement, Your Honor, we see Stanislaus and A&A are both being added as additional insureds to various ---- And you're telling me, and I'm not quite sure what your basis for telling me is, you're saying that A&A, even though it's in the contract, is not added to the commercial automobile coverage. You're saying only Stanislaus is. Where does that come from? Your Honor, the commercial ---- the hauling agreement, Your Honor, explicitly says that A&A will be added to the commercial general liability, to the trailer interchange and to the cargo. It does not require, does not state that A&A will be added to the commercial auto, but it does state that Stanislaus will be added to the commercial auto. Your Honor, these are additional insureds. Where's the haulage contract in the record here? I'm sorry, I don't have it right here. Yes, I can reference it, Your Honor. I'm sure you do. That's the transportation contract. Your insurance will include additionally. 303 is the hauling agreement, Your Honor. 303.  Thank you. And where's the clause about insurance? Here we go. Here we go. It is understood company's tomato hauling needs are to be provided by two tomato haulers. Contractor must agree to provide trailer interchange insurance with the other designated hauler in a form and proof acceptable to company. Additionally, contractor agrees to name the other designated hauler as an additional named insured on their general liability and motor cargo insurance policy. That's correct, Your Honor. The trailer interchange in the policy itself, Your Honor, is part of the commercial auto section, but it's separate and apart. It's section three of the commercial auto coverage section in the policy. The court must remember that there are two entities being added through the blanket endorsement, not one. This blanket endorsement applies to both ANA and Stanislaus to the extent whatever the hauling agreement, Your Honors, states very clearly which policies will be assigned to which entity. Stanislaus is added to the commercial auto policy. And, Your Honors, we did point out in our brief, we cited the law on the purpose of additional insurance. Yeah, I understand perfectly the purpose, and that may end up, and I'm not speaking for my colleagues. We typically don't confer before argument, so I don't know their views. I might be inclined in the end to rule for you, partly because it doesn't make sense. There are all kinds of things that happened that would not have happened if Antonini and if Carolina Casualty thought that ANA was insured for automobile liability, for example, coverage of drivers and so on, which wasn't done. Maybe the premiums would have gone up. I mean, there are all kinds of things that suggest that neither Antonini nor Carolina Casualty thought that ANA was covered under automobile part of the policy. But I'm now just looking at the haulage contract. It requires that the contractor, that the add shall be included under sub-umbrella policy as additional insured with respect to comprehensive general product and automobile and excessive liability coverage. I don't see anything in there that restricts that clause to status loss. That appears to me to apply to the contractor, the contractor who is described, defined in the policy as someone engaged in the business of hauling produce. Are you following me? Do you see where I am in the policy? Are you on paragraph 8? I'm on basic because I'm buried in the middle of paragraph 8. Company in this case, Your Honor, is the status loss of foods. Yeah, and shall afford contractor covered under da-da-da. Contractor is a hauler. ANA is a hauler. Yes, Your Honor, but 1, 2, 3, 4, 5, 6, 7, 8, 8 lines down in paragraph 8, Your Honor. We have the statement that contractor must provide these various coverages. Yes. And company shall be included under such policies as additional insured. Yeah, but I'm looking at the next sentence that says, in addition, not in contrast or in derogation of, it says, in addition. Yes, Your Honor. Yes. And that says, in addition, the other contractor will be added for the automobile policy. Your Honor, I'm not seeing where the Court sees that as applying to the separate hauler. Contractor is Antonini, Your Honor. Company is status loss. I may be misreading. Okay. Well, we'll take a closer look at that. Yeah, yeah. Okay. Let me stress, Your Honor, the term contractor is defined in this whole agreement as Antonini, not ANA. Yeah, okay. So over and above. Company is status loss. Contractor is Antonini. Your Honor, I'd point out to the Court that if the Court were correct on this point, it's not a point that's been made by the appellant in the appellate brief or any brief. Yeah, well, I'm understanding that. And, in fact, when I said, now, this argument didn't seem to me that you'd made, he said, well. I was going to say the part of the contract that Judge Fletcher is referring to, it's not applicable to ANA as I understand it. It's Antonini and status loss. Correct? The hauling agreement, yes, Your Honor. This is an agreement between Antonini and status loss. Yes, of course. It's significant, Your Honor, that there's no dispute between the parties to the contract or the beneficiary, ANA, about what was covered. The dispute's coming from the third party, the plaintiffs who later settled. I just wanted to make sure that I had read that the way you're reading it. Your Honors, may I? I'd like to conclude by addressing the certificate of insurance issue, if I may. A number of points are important to stress. First of all, the certificate of insurance as a matter of law, California law, is not determinative of coverage. Our briefs cite those cases, Your Honor, Empire Fire Party, U.S. Pipe, GTPI. Secondly, the certificate of insurance expressly states that it's not determinative. That's ER 312. Thirdly, Your Honors, the certificate of insurance is a statement of insurance held by Ansonini Freight Express, Inc. The insured is listed at the top. And this certificate summarizes the insurance coverage given to Ansonini. At the bottom, Your Honor, it says there is a certificate holder who's named as an additional insured. No further information is given. No information is given, Your Honor. The certificate is, even if the court were to use it to determine the coverage, which would be in violation of California law, the certificate gives no opinion on any differentiation between what the insured has covered and what the certificate holder has covered. It simply lists ANA as a holder on the certificate of insurance. And I would stress again, Your Honor, if the court looks at ER 312, the automobile liability section includes the trailer interchange coverage, which was given to ANA by the additional, by the blanket endorsement pursuant to the holding agreement. I would ask the court to follow California law and not even attempt to use the certificate of insurance to determine the purpose or the nature or the coverage in the policy. Without the blanket endorsement, Your Honors, the policy is clearly and undisputedly does not provide auto accident coverage to ANA. ANA, as the court knows, in the accident was operating its own vehicles, tomato trailers leased from Stanislaus, its own drivers. Antonina was not involved in any way. The determining document in relation to the policy is the haulage agreement. And, Your Honors, as I discussed earlier, the blanket endorsement, the court must remember, addresses all parties who must be added to the policy, to the coverages, pursuant to any written agreement, which means, Your Honors, Stanislaus and ANA, not just ANA. It's a very important point because I think it was ignored or left out by the plaintiff in the appellate brief. The appellant approaches the endorsement as if it only applies to ANA and then says, well, because it has a comment in there that there's some modification to auto coverage and because this endorsement accrues solely to the benefit of ANA, therefore, ANA must be given auto coverage as a result. But, Your Honors, Stanislaus is one of the beneficiaries of that endorsement and the haulage agreement dictates expressly and unambiguously which coverages will be assigned to which additional insured. And the blanket endorsement, which, Your Honor, Your Honor is right, this is a standard blanket endorsement. I've worked for 10 years with Carolina Casualty. I've seen hundreds of these. There's nothing unusual about the blanket endorsement, Your Honors, without reference to the haulage agreement. There's no way to know who the additional insureds are. That's why it says in the endorsement, if you want to understand who the insureds being added are, go read the written contract. Okay. Thank you. Thank you, Your Honors. Mr. Spence. Thank you. I'll be very brief. I the idea of looking at the language of the policy and at the hauling agreement and the certificate of insurance is to determine the intent of the parties when they entered into this transaction. And we pointed out in our brief we have Antonini and ANA having mirrored contracts. The trigger is the hauling agreement, which tells Antonini they must add ANA onto their policy of insurance. Commercial liability insurance. Yeah. Policy. But this policy is all-encompassing. It also says that the evidence of what coverage is being provided is the certificate of insurance. The certificate of insurance names ANA the certificate holder. It clearly states the holder is a named additional insured under these coverages. We've pointed out, and it's in the record, at 322. Antonini did exactly the same thing to ANA. Antonini has auto coverage, general liability, the same coverages as provided to ANA. They're mirrors of each other. If you look at this whole, and then there is the testimony that we provided by the head of ANA that says there was an agreement that we would just cross-insure everything. If you look at this in its totality, everybody agreed to cross-insure everyone. They agreed to cross-insure for the general liability, for the auto. Even under the general liability, under the ANA policy, excuse me, under the Carolina policy, if you're added to the general liability, what do you get? All you get under the blanket endorsement is auto coverage. Okay? If you say that the auto exclusion wipes out auto coverage in the blanket endorsement, then, in fact, what Carolina Casualty provided to ANA transport under the Hauling Agreement is nothing. And certainly the parties did not agree that they would be insured for nothing. Okay. Thank you. Thank you very much. Thank you very much. The final case of the argument this morning, Carolina Casualty Insurance versus Diego, is submitted. Thank you both for your arguments. And you can go back and say that he can safely entrust arguments to you. Thank you. Thank you. Thank you. All rise.
judges: Jones, Fletcher W. , Smith N. R.